# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.                           Criminal Action No. 1:07CR53

DEANTE DRAKE,

    Defendant.

## OPINION/REPORT AND RECOMMENDATION

### I.
### Procedural History

Defendant, Deante Drake, was charged by Indictment with conspiracy to possess with intent to distribute and distribution of fifty (50) grams or more of cocaine base (Count One); aiding and abetting in the distribution of a quantity of cocaine base (Count Two); and aiding and abetting in the possession with intent to distribute fifty (50) grams or more of cocaine base (Count Four) (DE 14).

Defendant filed his Motion to Suppress Evidence on July 6, 2007 (DE 52). The United States filed its response on July 20, 2007 (DE 59).

On July 24, 2007, Defendant appeared in person and by his counsel, Stanton D. Levenson (the undersigned having previously excused local counsel Charles E. Anderson for attending the hearing due to a pre-scheduled vacation), and also came the United States, by Assistant United States Attorney Shawn A. Morgan, for the taking of evidence and hearing of argument. The United States presented the duly sworn testimony of Deputy Darren L. Stout of the Lewis County Sheriff's Department and Sgt. Brian Purkey of the City of Bridgeport Police Department and members of the Harrison/Lewis Violent Crimes and Drug Task Force. Thereafter, the matter was submitted for decision.

## II.
## Contentions of the Parties

### Defendant

1) The authority to search under the warrant issued had expired.

2) The search warrant affidavit failed to establish probable cause to believe that the items sought would be located at the place to be searched.

### United States

1) Defendant, Deante Drake, lacks standing to challenge the search of the residence in question and seizure of evidence.

2) The search warrant was based on probable cause.

3) Sufficient nexus between criminal conduct and the place to be searched existed to justify the search.

4) The search warrants were valid.

5) Any invalidity of the search warrant for lack of probable cause is saved under the Leon "*Good Faith*" exception.

## III.
## Undisputed Facts

1) On April 19, 2007, TFO/Dep Darren Stout presented an affidavit and application for a search warrant in 1:07 MJ00024 for "618 Buckhannon Avenue, Clarksburg, West Virginia further described as a two story wooden structure, white in color" (DE 1 and 5).

2) Although the search warrant was issued as requested, it was returned unexecuted on May 4, 2007 (DE6).

3) On May 8, 2007, a new affidavit and application for a search warrant of "618 Buckhannon Pike, Clarksburg, West Virginia further described as a two story wooden structure, white in color," was sought in 1:07MJ00024 by Darren L. Stout from Chief United States District Judge Irene M. Keeley (DE7).

4) The first eleven (11) of thirteen (13) numbered paragraphs of the "Application and Affidavit for Search Warrant" sworn to before Chief District Judge Keeley by Darren

L. Stout on May 8, 2007, are identical to the eleven (11) numbered paragraphs of the "Application and Affidavit for Search Warrant" sworn to before the Magistrate Judge by Darren L. Stout on April 19, 2007.

5) The only difference in the "Application and Affidavit for Search Warrant," sworn to before Chief Judge Keeley by Darren L. Stout on May 8, 2007 and the "Application and Affidavit for Search Warrant," sworn to before the Magistrate Judge on April 19, 2007, is the inclusion of the following two paragraphs in the May 8, 2007 application:

"12. On Monday, May 07, 2007, I was contacted by a CI that advised me that a crack dealer from the Pittsburgh, PA, area was at the CARROLL residence by the name of 'Papa Bear' to sell crack cocaine."

"13 On Tuesday, May 08, 2007 a controlled purchase of crack cocaine for $200.00 was made by a CI at the CARROLL residence for cocaine base. This controlled buy was supervised by the HLDTF."

6) On the "Application and Affidavit for Search Warrant" form for the May 8, 2007, search warrant, the brief description of the property or premises to be searched was "618 Buckhannon Pike" instead of "618 Buckhannon Ave" as shown on the same form for the April 19, 2007, search warrant.

7) Chief District Judge Keeley issued the search warrant on May 8, 2007.

8) The search warrant issued by Chief District Judge Keeley on May 8, 2007 (DE 8), commanded the search "on or before April 30, 2007."

9) The search warrant issued by the Magistrate Judge on April 19, 2007, commanded the search "on or before April 30, 2007."

10) After the search warrant was issued, a team of police entered the Carroll residence at 618 Buckhannon Pike to execute the May 8, 2007, search warrant.

11) Inside of the Carroll residence were found: the two Carrolls (Tina and James), two females, Brian Yeager and Deante Drake.

12) Sgt. Brian Purkey, stationed near the rear of the Carroll house, observed Deante Drake's head and one arm protrude through a window in the bathroom to the outside of the house. In the protruding hand was a "wad of cash."

13) Sgt. Purkey ordered Drake to pull back inside of the bathroom area of the house.

14) Sgt. Purkey heard the sound of a toilet being flushed coming from the bathroom area of the house.

15) Sgt. Purkey recovered one or two twenty-dollar ($20.00) bills, a plastic baggie corner from the toilet bowl and a quantity of crack cocaine in two plastic baggies from the toilet trap of the bathroom of the Carroll house.

16) $5,800 or $5,900 in cash was also found by the police in the bath tub in the bathroom of the Carroll house.

17) Deante Drake's driver's license was recovered from a back bedroom.

18) 618 Buckhannon Pike was being leased by the Carrolls.

19) Deante Drake was not the lessee of 618 Buckhannon Pike.

20) No luggage, personal hygiene products or other personal property particularly belonging to Deante Drake was found in the 618 Buckhannon Pike residence.

21) Deante Drake stated to Sgt. Purkey that "you need to look at the white boy" with respect to the stuff Purkey found in the toilet.

## IV.
## Discussion

### Standing

A person challenging a search must have "a reasonable expectation of privacy" in the place that is being searched. Rakas v. Illinois, 439 U.S. 128, 143 (1978).

The expectation inquiry appears to depend on the place or thing being searched. In Stoner v. California, 376 U.S. 483, 490 (1964) the Supreme Court held that a guest in a hotel room did have an expectation of privacy in his hotel room. The Fourth Circuit limits that reasonable expectation of privacy to the period of the rental of the room. United States v. Kitchens, 114 F.3d 29, 31 (4th Cir. 1997). The reasonable expectation of privacy ends "after [the] rental period has terminated." On the other hand, when the subject of the search is a bag or container on a public bus, the Court in Bond v. United States, 529 U.S. 334 (2000) held that a passenger on public transportation did have a reasonable expectation of privacy with respect to his carry-on luggage. The Court refined the

4

Fourth Amendment analysis as follows:

> First, we ask whether the individual, by his conduct, has exhibited an actual expectation of privacy .... Second, we inquire whether the individual's expectation of privacy is "one that society is prepared to recognize as reasonable."

It is Drake's stated position that he had a right to privacy in the whole of the Carroll residence and that the search of that residence violated his right to privacy. He asserts he establishes such a right by virtue of the fact he was present in the residence at the time of the search and that the government is unable to establish that he was not a term resident in the Carroll apartment.

Drake's position lacks merit. Drake did not own the residence that was searched. Drake did not rent the residence that was searched. There is no evidence that Drake rented a room or area within the searched residence. There is no evidence that Drake even resided in a specific room or area of the house for any period of time up to and including the time of the search. There is no evidence to support a conclusion that any of the evidence seized incident to the search came from any container or bag claimed by Drake, identified as belong to Drake, or in which Drake, by his conduct, exhibited an actual expectation of privacy, much less such an expectation as would be recognized by society.[1]

Abandonment

Drake has no standing to challenge the seizure of the cash or drugs found in the bathroom tub and the bathroom toilet (water closet), respectively, because he, by his words and deeds, abandoned the same. Abel v. United States, 362 U.S. 217, 241 (1960); United States v. Stevenson, 396 F.3d 538, 546-547 (4th Cir.) *cert. denied,* 125 S.Ct. 2534 (2005). One who denies ownership of certain property loses any standing he may have had to contest its search and seizure. Rawlings

---

[1] Drake offered no testimony or other evidence at the suppression hearing.

v. Kentucky, 448 U.S. 98, 104 (1980) and United States v. Carter, 300 F.3d 415, 421 (4th Cir.) *cert. denied*, 537 U.S. 1065 (2002).

In the instant case, Drake was seen by Sgt. Purkey with his head and arm out the bathroom window as the search team was entering the Carroll residence and beginning the search process. In Drake's hand was a "wad of cash." Purkey next saw one or two twenty-dollar ($20.00) bills in the toilet and a large amount of cash in the bathtub. No testimony was offered that other cash was found on Drake as he was arrested. At no time does Drake claim ownership of the cash in the tub and toilet. If the cash in the bathtub and toilet is the same cash Drake was holding in his hand when he was first seen, his act of getting rid of the cash before being apprehended is as clear an expression of abandonment of any privacy interest in the cash as if he had verbally denied ownership.

Similarly with respect to the contraband drugs found in the toilet, Drake abandoned any claim of a privacy interest. However, with respect to the drugs, Drake verbally expressed his abandonment when he stated to Sgt. Purkey: "[Y]ou need to look at the white boy" with respect to the stuff [drugs] found in the toilet. The statement Drake made to Sgt. Purkey does not result from the "truly repetitive questioning" that "might be coercive in particular circumstances" under the dicta announced in United States v. Han, 74 F.3d 537, 544-545 (4th Cir. 1996). No evidence was offered at the suppression hearing that there was any ongoing questioning of Drake at the time of his statement. The evidence before the undersigned clearly indicated Drake's statement was a spontaneous self serving statement made by him to direct the officers to another person with respect to the drugs found within the toilet. Contrary to the facts of Han, Drake does not now recant his implied claim that the drugs were the "white boy['s]" and instead, now claim ownership of the drugs found in the toilet.

6

Scrivener Error or Typographical Error

It is not factually disputed that the search warrant issued by the Chief District Judge on May 8, 2007 ordered that the search be conducted on or before April 30, 2007. Defendant produced no evidence at the suppression hearing that the insertion of the April 30th date was intentionally done or was anything but the inadvertent copying of the body of an earlier un-executed search warrant date[2] into the body of the May 8th warrant.

Citing Sgro v. United States, 287 U.S. 206 (1932); State v. Bruno, 427 So. 2d 1174 (La. 1983); and Commonwealth v. Cromer, 313 NE 2d 557 (Mass. 1974), Defendant argues "If a search warrant is executed after the specified time has run, the evidence seized pursuant to its execution must be suppressed." (Defendant's Motion p. 2, DE 52). Defendant's reliance on Sgro is misplaced as the facts of the case and holding of the Court are distinguishable from the facts governing Drake's case. In Sgro, a United States Commissioner issued a search warrant on July 6, 1926. On July 26, 1926, when the warrant had not been executed within the ten (10) day time frame allotted, the prohibition officers return to the Commissioner and the date on the original search warrant was changed from July 6, 1926 to July 27, 1926. The re-issued search warrant was then executed. On review, the Court held the search warrant was void because it was not **executed** within the statutory time; there was no probable cause shown as of the time of the issuance of the new warrant; and it violated the National Prohibition Act. The essence of Sgro is that if the execution of the search warrant does not occur within the statutorily allotted ten (10) days, the warrant violates statute and

---

[2]The present practice of using computers to reprint the body of documents results in dates and other data within the body of one document to be inadvertently made a part of another document. That is what occurred with respect to the March 8 search warrant. The officer or AUSA who prepared the search warrant that was submitted to the District Judge used the digital copy of the April un-executed search warrant.

the information on which it was originally issued is stale, making it void.

In the instant case, the May 8, 2007, search warrant issued by the Chief District Judge was executed by the police on the 618 Buckhannon Pike Carroll residence on May 8, 2007. Accordingly, the warrant was executed on the date it was issued and well within the ten (10) days normally allotted. FRCrimP 41(e)(2)(A)(i) requires: "Except for a tracking-device warrant, the warrant must identify the person or property to be searched, identify any person or property to be seized, and designate the magistrate judge to whom it must be returned. The warrant must command the officer to: (i) execute the warrant within a specified time no longer than 10 days." By executing the warrant on the same date it was issued by the Chief District Judge, the execution occurred within the ten (10) days required by the rule.

There is no question of staleness because the affidavit on which the Chief District Judge relied in making the probable cause determination for the issuance of the May 8, 2007 warrant included two new and different paragraphs, outlining additional events that occurred later than the events outlined and relied on by the undersigned in issuing the un-executed April warrant.

Defendant's reliance on State v. Bruno, *supra,* is completely misplaced. The Louisiana Supreme Court upheld Bruno's conviction of possession of controlled substances finding: "that warrant authorizing search of house was not invalid, and items obtained during course thereof were not subject to being suppressed, where warrant was executed seven days after **its issuance**, well within statutory limits, and ongoing, drug-related activity on premises was not only observed by informant, but was confirmed by affiants, thus warranting a man of reasonable caution to believe that controlled dangerous substances would be on premises one week after issuance of the warrant." As previously noted, the May 8, 2007, search warrant was executed on the same day it was issued and

8

the additional paragraphs (12 and 13 of the affidavit) clearly reflect ongoing drug activity and drug related activity at the Carroll residence on the 7th and 8th of May 2007.

Defendant's reliance on Commonwealth v. Cromer, *supra* is similarly misplaced. The Supreme Judicial Court of Maine held that "even if it were determined that the seven-day delay in execution of search warrants was unreasonable under the circumstances, in absence of any demonstration of prejudice by defendants attributable to the delay the motions to suppress were properly denied." In the instant case, Drake makes no attempt to show any prejudice by the fact that the last date set for execution of the search warrant (April 30th) had already expired prior to the issuance of the warrant on May 8, 2007.

More on point to the issue at hand are the cases argued by the United States in its Memorandum in Opposition (DE 59, p. 10). Chief Judge Haden of the DCWVa held in In re Motion to Quash Grand Jury Subpoenas, 593 F. Supp 184 (DCWVa 1984): the "Fact that search warrant, dated August 12 and requiring that it be executed on or before date of its issuance, was in fact executed on the next day did not invalidate the warrant, where Government stated intended date of August 22 was not typed in because of a typographical error, search was delayed because of executing officer's desire to avoid property damage to offices to be searched, and executing officers acted in good-faith reliance on the validity of the warrant." What occurred in Drake is in line with what occurred in In re Motion to Quash Grand Jury Subpoenas. Except for not wanting to do damages to the premises being searched as a reason for delay, the situations presented by the two warrants are the same.

Probable Cause

"'Probable cause' for the issuance of a search warrant simply means that a probability, and

not a prima facie showing, of criminal activity must be established." In re Motion to Quash Grand Jury Subpoenas, *Id.* Probable cause only requires "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). It does not "require officials to possess an airtight case before taking action. The pieces of an investigative puzzle will often fail to neatly fit, and officers must be given leeway to draw reasonable conclusions from confusing and contradictory information, free of the apprehension that every mistaken search or seizure will present a triable issue of probable cause." Taylor v. Farmer, 13 F.3d 117, 121-122 (4th Cir. 1993). "Hearsay evidence may properly constitute the basis for a finding of probable cause for the issuance of a search warrant." In re Motion to Quash Grand Jury Subpoenas, *supra.* See also United States v. Ventresca, 380 U.S. 102, 103 (1965); United States v. Dequasie, 373 F.3d 509, 518 (4th Cir. 2004) and United States v. Chavez, 902 F.2d 259, 265 (4th Cir. 1990).

Paragraphs 12 and 13 of the affidavit, sworn to by the officer before the Chief District Judge, aver:

"12. On Monday, May 07, 2007, I was contacted by a CI that advised me that a crack dealer from the Pittsburgh,PA, area was at the CARROLL residence by the name of 'Papa Bear' to sell crack cocaine."

"13 On Tuesday, May 08, 2007, a controlled purchase of crack cocaine for $200.00 was made by a CI at the CARROLL residence for cocaine base. This controlled buy was supervised by the HLDTF."

Those averments, in combination with Paragraph 7, averring Tina Carroll's February 9, 2007, attempt to purchase crack cocaine from Sgt. Purkey, who was acting in an undercover capacity; Paragraph 8, averring Tina and James Carrolls' April 12, 2007, selling of crack cocaine to a drug

10

task force monitored confidential informant; Paragraph 8, averring the April 20, 2007, drug task force monitored confidential informant's purchase of crack cocaine from the Carroll residence; Paragraph 10, averring the April 20, 200, citizen complaints about drug dealing from the Carroll residence; and Paragraph 11, averring a separate citizen complaint about high traffic volume and short visits to the Carroll residence which was indicative of drug dealing, formed the basis for the Chief District Judge's probable cause determination and determination of a nexus between the drug activity and the place to be searched.

Chief District Judge Keeley had before her on May 8, 2007, an affidavit which clearly outlined a continuum of drug activity involving Tina Carroll, James Carroll, their residence from February up to May 7, 2007, the day before the search warrant was issued and executed. She also had information that a drug dealer from out of town was at the Carroll residence to sell crack cocaine on May 7, 2007. Finally, Judge Keeley had a confidential informant's controlled purchase of crack cocaine from the Carroll residence on May 7, 2007.

The affidavit provided more than adequate facts and information for a probable cause determination, i.e.: that there was "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, *supra.*

Good Faith Exception

Should the District Court find that the affidavit is insufficient, even under the totality of the circumstances to support a probable cause determination, the government argues that the evidence obtained in the execution of the warrant is saved from suppression under the "good faith" exception to the exclusionary rule announced in United States v. Leon, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). In Leon, the Supreme Court recognized "a good-faith exception to searches

conducted pursuant to warrants." Id. at 924, 104 S. Ct. 3405, 3421.

In Arizona v. Evans, 514 U.S. 1, 115 S. Ct. 1185, 131 L. Ed. 2d 34 (1995), the Supreme Court held that evidence seized in violation of the Fourth Amendment as a result of clerical errors was admissible under the "good faith" exception.

The exclusionary rule operates as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." United States v. Calandra, 414 U.S. 338, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974). In Leon, the Supreme Court explained the reason for rule. "First, the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. Second, there exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion. Third, and most important, we discern no basis, and are offered none, for believing that exclusion of evidence seized pursuant to a warrant will have a significant deterrent effect on the issuing judge or magistrate." 468 U.S. 897, 915, 104 S. Ct. 3405, 3417.

"If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." Id. at 918, 104 S. Ct. 3405, 3419. The Supreme Court concluded that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." Id. at 922, 104 S. Ct. 3405, 3420. Therefore, the question of whether the good faith exception to the exclusionary rule should be applied to suppress evidence, depends on whether

suppression of the evidence would have the desired effect of deterring police misconduct. In most cases, "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope . . . . there is no police illegality and thus nothing to deter." Id. at 920-21, 104 S. Ct. 3405, 3419.

The Fourth Circuit followed the Supreme Court's line of reasoning in United States v. Hyppolite, 65 F.3d 1151 (4th Cir. 1995). In Hyppolite, the defendant moved to suppress evidence that was obtained pursuant to a search warrant. In issuing the search warrant, the state magistrate had relied in part on factors such as Hyppolite's refusal to answer officers' questions and his refusal to consent to a warrantless search, as well as the manner of his refusals. See id. at 1155. The district court found that no probable cause existed for the search warrant before the officers encountered Hyppolyte. Hypployte argued that the assertion of his constitutional rights and the manner in which he asserted them should not support a finding of probable cause. Id. The district court did not reach the question of whether the form in which a suspect asserted his rights could be part of the determination of probable cause. Instead, the district court concluded that the evidence seized pursuant to the warrant should be admitted under the good faith exception to the exclusionary rule. Id.

The Fourth Circuit held that "an objectively reasonable officer should have known that the mere assertion of constitutional rights cannot establish probable cause." Id. at 1157. However, the Court found the question of whether the form of the assertion of constitutional rights could be considered was less settled. Therefore, because the law was not clear whether such factors should have been considered by the magistrate when the officers sought the warrant, the Court concluded that, "an objectively reasonable officer could have relied on the magistrate's determination of

probable cause in this case." Id. "Because the officers reasonably could have relied on the magistrate's determination that the manner in which Hyppolite asserted his rights could support a finding of probable cause," the Court affirmed the district court's denial of Hyppolite's motion to suppress. Id.

Therefore, the question in the present case is whether the officers reasonably relied on the Chief District Judge's determination that probable cause existed for the search. Under the circumstances enumerated herein, the officers did reasonably rely on the determination of the Judge.

## V.
## RECOMMENDATION

Based on the foregoing analysis, the undersigned concludes that the Defendant does not have standing to challenge the search of the Carroll residence; that with respect to the contraband drugs and money found in the toilet and bathtub of the Carroll residence, Defendant abandoned the same and has no right to challenge their seizure; that the search warrant issued on May 8, 2007, was valid notwithstanding the fact that it contained a scrivener error directing its execution even before it was issued; that the search warrant was based on a proper probable cause determination made by the Chief District Judge and was not stale and contained a proper nexus between the alleged criminal activity and the place to be searched; and even is the probable cause determination is found to be suspect, the officer's reliance on the search warrant was proper under Leon.

Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion To Suppress Evidence (DE 52) be **DENIED.**

Any party may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the

14

proposed Report and Recommendation to which objection is made and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, Chief United States District Judge. Failure to timely file objections to the proposed Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such proposed findings and recommendation. 28 U.S.C. § 636(b)(1); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *Thomas v. Arn*, 474 U.S. 140 (1985).

The Clerk of the United States District Court for the Northern District of West Virginia is directed to mail an authenticated copy of this proposed Report and Recommendation to counsel of record.

DATED: August 3, 2007

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE