**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**DEANTE DRAKE,**

    **Petitioner,**

**v.**           **Civil Action No. 1:09cv128**
              **Criminal Action No. 1:07cr53-1**
              **(Judge Keeley)**

**UNITED STATES OF AMERICA,**

    **Respondent.**

**OPINION/REPORT AND RECOMMENDATION**

**I. Introduction**

On August 28, 2009, the *pro se* petitioner filed a nearly-blank, unsigned, undated Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody with a number of attachments, but no memorandum in support.[1] By Order entered on August 31, 2009, petitioner was directed to file a more complete motion under § 2255.[2] On September 24, 2009, petitioner filed an amended § 2255 motion with a memorandum in support.[3] The Government filed its response on October 26, 2009.[4] Petitioner replied on November 16, 2009.[5]

**II. Facts**

**A. Conviction and Sentence**

---

[1] Dkt.# 223.

[2] Dkt.# 228.

[3] Dkt.# 231 and 231-1.

[4] Dkt.# 235.

[5] Dkt.# 236.

On January 9, 2008, petitioner signed a plea agreement, agreeing to plead guilty to Count One of a five-count superseding indictment; possession with intent to distribute and distribute 50 grams or more of cocaine base, a/k/a "crack" cocaine, in violation of Title 21, U.S.C. § § 841(a)(1) and 841(b)(1)(A), and 846.[6] The parties stipulated and agreed that petitioner's total drug relevant conduct was at least fifty (50) grams but less than one hundred fifty (150) grams of cocaine base, and that petitioner was a career offender under §451.1 of the Guidelines. (Id. at 2 - 3). In the plea agreement, the petitioner waived his right to appeal and to collaterally attack his sentence. Specifically, the agreement states:

> 12. The above paragraph notwithstanding, the defendant will retain his appellate rights and rights to collaterally attack his sentence only with respect to any sentence imposed using a base offense level 38 or higher. This reservation of rights is designed to ensure that the United States and the defendant retain the benefits of the plea agreement. It is not intended to represent the defendant's estimation of what an appropriate or reasonable sentence would or should be. Nor does this reservation of rights prevent the defendant from arguing for a sentence below the aforementioned adjusted Guideline offense levels. The United States will retain the right to appal any sentence imposed.

(Id. at 4).

On January 9, 2008, petitioner, aged 33 with an 11th grade education and no GED, entered his plea in open court. (Dkt.# 184 at 4). Petitioner testified that he could read and understand English; denied having taken any medication or drug or alcohol, other than his morning insulin that morning; denied any type of visual or auditory impairment that would prevent his full participation in the hearing; and testified that he knew where he was and what he was doing. (Id. at 4 - 6. During the plea hearing, the Assistant U.S. Attorney ("AUSA") read aloud in open court each paragraph of the plea agreement, including the paragraph 12 *supra*. (Id. at 8 - 10). The Court specifically asked

---

[6] Dkt.# 141.

petitioner if  he understood the waiver of his appellate and post-conviction relief rights and petitioner indicated that he did. (<u>Id</u>. at 28 - 30 and 33 - 34).  The Court asked petitioner whether he and his counsel had reviewed the plea agreement in detail before he signed it, and petitioner stated that they had.  (<u>Id</u>. at 11).

The Court then informed petitioner that the maximum sentence for the crimes  which he was pleading would be imprisonment for a minimum period of 10 years to life; a fine of not more than $4,000,000; a mandatory minimum payment of $100; and a term of at least five years of supervised release (<u>Id</u>. at 13); but that the ultimate sentence could be greater than that estimated by his counsel. Petitioner indicated that he understood.  (<u>Id</u>. at 11 - 18).  The Court specifically asked petitioner whether he understood that the length of his sentence could not be determined by anyone until the pre-sentence report ("PSR") was completed and petitioner indicated his understanding of that fact. (<u>Id</u>. at 15).  The Court specifically stressed and asked petitioner if he understood  his plea agreement contained a stipulation by which he admitted  to being a career offender.  He said: "Yes." (<u>Id</u>.  at 10). The Court then summarized the rights that petitioner was giving up by pleading guilty.  (<u>Id</u>. at 31 - 34).  To establish a factual basis for the plea, the Government presented the testimony of Deputy Darin Stout of the Lewis County Sheriff's Office, assigned to the Harrison-Lewis County Drug and Violent Crimes  Task Force.  (<u>Id</u>. at 34 - 35).  The petitioner did not contest the factual basis of the plea. When asked if he challenged or disagreed in any way with the wit ness' testimony, he testified "No." (Dkt.# 37).

After the factual basis for the plea was presented, the petitioner entered his plea.  The Court asked petitioner if he agreed that Deputy Stout's testimony was a fair and accurate rendition of what happened on May 8, 2007, petitioner replied "Yes." (<u>Id</u>. at 39).  The Court asked petitioner if his

lawyer had done a good job representing him and he responded "[y]es." (Id. at 40). The Court further asked petitioner whether he thought that there was any thing he thought that his lawyer, retained counsel, had left undone, or anything that he thought his lawyer did improperly, and petitioner stated "[h]e did everything." (Id. at 43). At the conclusion of the hearing, the Court determined that: petitioner was competent; he had made his plea freely and voluntarily with full understanding of its consequences; and that he understood the statutory maximum and minimum penalties he was subjected to by virtue of his plea. (Id. at 44 - 45). Petitioner did not object to the Court's finding.

On May 12, 2008, petitioner appeared before the court for sentencing. He was found to have a base and adjusted offense level of 30 with a two-level reduction for acceptance of responsibility. (Dkt.# 185 at 8 - 9). An additional one-level reduction was denied because, although petitioner had cooperated, he had failed to do so in a timely manner, causing the Government to undertake unnecessary trial preparation. Petitioner's total offense level was 28. (Id.). His criminal history category would have been IV, but after a Guideline §4B1.1(b)(A) career offender enhancement, he had a Criminal History category of VI and an adjusted offense level of 37. After the re-application of the two-level reduction for acceptance of responsibility, this became a 35. (Id. at 9 - 13). The Court made tentative findings that the guidelines called for a sentencing range of 292 to 365 months imprisonment, five years of supervised release, and a recommended fine range of twenty thousand to four million dollars. (Id. at 13 - 14). Neither party objected to the Court's tentative findings.

After five members of his family spoke on his behalf, petitioner invoked his right of allocution, apologizing and asking for leniency. (Id. at 21 - 25). The Court then heard argument from counsel. Defense counsel, although he filed no objections, asked the Court to forgo application

of petitioner's career offender enhancement and grant either variant sentence of not more than the mandatory minimum of ten years (Id. at 5 - 7), or a downward departure for over-representation of his criminal history. (Id. at 30). The Government opposed defense counsel's requests and asked for a sentence at the lower end of the Guideline. Taking all necessary information into consideration, the Court sentenced petitioner to serve a total term of 292 months imprisonment, the lowest end of the Guideline range (Id. at 43), with credit for time served since May 9, 2007. Petitioner's incarceration was to be followed by five years supervised release. The Court recommended that petitioner participate in the five hundred hour intensive substance abuse treatment program. (Id. at 44). The Court then advised petitioner that, pursuant to ¶ 12 of his plea agreement, since his base offense level was 37, he was well within the terms of his waiver of appellate and habeas corpus rights. After the Court explained the process for filing an appeal in *forma pauperis*; petitioner indicated his understanding. (Id. at 45 - 47).

B.    **Direct Appeal**

On May 22, 2008, petitioner filed a Notice of Appeal (Dkt.# 170), contending that:

1) the waiver of his appellate and collateral attack rights did not include his rights to challenge a sentence that was either outside of the scope of the waiver or based on a constitutionally improper factor such as race;

2) his waiver of appellate and collateral attack rights was unenforceable because the sentencing proceedings were motivated by racial bias;

3) the sentence imposed on him an African-American was disproportionate to the sentences imposed on his Caucasian co-defendants who were equally culpable, thus violating his due process rights;

4) the District Court erred by not exercising its discretion to bring the sentences of petitioner and his co-defendants into parity.

On March 16, 2009, the judgment of the district court was dismissed in part and affirmed in

part by the Fourth Circuit in an unpublished *per curiam* opinion. (Dkt.# 202). The Fourth Circuit concluded that petitioner's appeal was barred by his waiver of appellate rights, except for his claim that his sentence was impermissibly based upon race, which had no merit. Mandate issued on April 7, 2009. (Dkt.# 208). Petitioner did not petition for writ of *certiorari* with the United States Supreme Court.

## C. **Federal Habeas Corpus**

### **Petitioner's Contentions (Dkts.# 223, 231 and 231-1)**

Petitioner raises five grounds of ineffective assistance of counsel, reorganized here for clarity:

1) counsel was ineffective for not appealing the denial of his motion to suppress, challenging the validity of the warrant;

2) counsel was ineffective for "getting Petitioner to A waiver [sic] on the grounds raised herein," because the "waiver was base [sic] on misrepresented information;"

3) counsel was ineffective for not challenging the Government's failure to file a 21 U.S.C. § 851(a)(1) Notice of Information of Prior Convictions, prior to the entry of petitioner's plea;

4) at sentencing, counsel was ineffective for not challenging petitioner's prior felony convictions, since those crimes were insufficient to trigger a "career criminal" [sic] enhancement because they were not serious drug offenses; and

5) appellate counsel was ineffective for not challenging the fact that petitioner's indictment was based on a defective warrant.

Petitioner states that he did not raise his claims previously because they were ineffective assistance of counsel claims, not properly brought on direct appeal.

As relief, he requests that: 1) his career offender enhancement be dropped; 2) that he be re-sentenced with his "original base offense [level of] 28 Catg III, which is 87 - 108;" (Dkt.# 231 at 11), and 3) that he be granted an evidentiary hearing on the defective warrant and indictment.

### Government's Response (Dkt.# 235)

The Government contends that petitioner waived his right to file an appeal and collaterally attack his sentence, if the Court calculated that sentence using a Base Offense Level of 37 or lower. Because petitioner's Base Offense was 37, his § 2255 motion should be dismissed.

Counsel was not ineffective for failing to appeal the Magistrate Judge's findings denying his motion to suppress based on the purportedly defective warrant. Petitioner did not object to the findings and the Court adopted them the same day petitioner signed his plea agreement. Petitioner never complained of this issue at the plea hearing; instead, he testified that he was satisfied with counsel's performance. Petitioner has failed to show prejudice for this issue and his argument fails.

Counsel was not ineffective for failing to challenge petitioner's prior convictions. First, sentencing issues generally cannot be raised in a § 2255 motion. Further, petitioner's claim lacks support in the record. Petitioner stipulated to his career offender status in his plea agreement. Moreover, petitioner was thoroughly questioned by the Court on the issue at his plea hearing, and testified that he understood that he was agreeing that he was a career offender. Counsel did challenge the career offender finding at sentencing and asked the Court to ignore it and impose a variant sentence or grant a downward departure.

Petitioner's claim that his waiver of collateral attack rights was not knowing and voluntary is unsupported by the record.

### Petitioner's Reply (Dkt.# 236)

Petitioner refutes the Government's response by reiterating his § 2255 motion claims.

### Government's Supplemental Response (Dkt.# 240)

Petitioner's claim that he never received any notice, pursuant to 21 U.S.C. § 851(a)(1) that

his sentence was to be statutorily enhanced is unfounded.  The reason that the record lacks any reference to § 851(a)(1) is because it was never applied in petitioner's case.  Although such a notice could have been filed, because petitioner had two prior drug felony convictions, to his benefit, the Government did not file the notice.  Had it been filed, it would have enhanced petitioner's applicable statutory mandatory minimum sentence from 10 years to life imprisonment.  Petitioner's *sentence* was not statutorily enhanced; rather, his advisory guideline range was enhanced, pursuant to U.S.S.G.§ 4B1.1, because of his status as a "career offender" with two prior drug felony convictions. Petitioner did  receive notice of this likely career offender enhancement.  It was memorialized in ¶ 4, ¶9, and ¶ 12 of his plea agreement. Further, during the plea hearing, the Government discussed the parties' belief that petitioner was a "career offender" and the Court  reviewed the issue extensively with petitioner to ensure his understanding.

Petitioner filed no reply to the Government's supplemental response.

**D.**     **Recommendation**

Based upon a review of the record, the undersigned recommends that petitioner's § 2255 motion be denied and dismissed from the docket because petitioner knowingly, intelligently, and voluntarily waived the right to collaterally attack his conviction, thus barring review of most of its claims.  Petitioner's remaining claims that are not barred by the waiver should also be denied, as they lack merit.

### III. Analysis

**A.**     **Burden of Proof**

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United

8

States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack.  28 U.S.C. § 2255.  A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence."  <u>Sutton v. United States of America</u>, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006).

**B.     <u>Waiver</u>**

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system.  Properly administered, they can benefit all concerned."  <u>Blackledge v. Allison</u>, 431 U.S. 63, 71 (1977).  However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality."  <u>Id.</u>  "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement."  <u>United States v. Lemaster</u>, 403 F.3d 216, 220 (4th Cir. 2005).

In <u>United States v. Attar</u>, 38 F.3d 727, 731 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal."  The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused."  <u>Id.</u>  After upholding the general validity of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds.  <u>Id.</u> at 732.  For example, the Court noted that a defendant "could not be said to have waived her right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally

impermissible factor such as race."  Id.  Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel."  Id.

Subsequently, in Lemaster, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights.  Lemaster, 403 F.3d at 220.  Therefore, like the waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary.  Id.  And, although the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights."  Id. at n. 2.

Based on these cases,  ineffective assistance of counsel ("IAC") claims are barred by a valid waiver, to the extent that the facts giving rise to the claims occurred prior to the defendant entering his guilty plea.  Only claims arising after the entry of the guilty plea may fall outside the scope of the waiver.  Attar, 38 F.3d at 732 [holding it cannot be fairly said that a defendant "waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations"].

Therefore, when reviewing an ineffective assistance of counsel claim in a case where there is a waiver of collateral-attack rights in a plea agreement, we must first determine whether there is

valid waiver. In doing so,

> The validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. Although this determination is often made based on adequacy of the plea colloquy -- specifically, whether the district court questioned the defendant about the appeal waiver – the issue ultimately is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted).

In other words, the Court must examine the actual waiver provision, the plea agreement as a whole, the plea colloquy, and the defendant's ability to understand the proceedings. Id. If the Court finds that the waiver is valid, any IAC claims arising prior to the plea agreement are barred by the waiver.

As to any IAC claims made regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has stated the right to challenge a sentence on the ground that "the proceedings following entry of the guilty plea – including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas – were conducted in violation of their Sixth Amendment right to counsel" are not waived by a general waiver of appeal rights contained in the plea agreement. Attar, 38 F.3d at 732-33. Therefore, upon first blush it appears that IAC claims arising after the guilty plea and/or during sentencing are not barred by a general waiver-of appeal rights.

Several courts have distinguished IAC claims raised in a § 2255 case from those raised on direct appeal. In Braxton v. United States, 358 F. Supp. 2d 497 (W.D.Va. 2005), the Court noted that although the Fourth Circuit has yet to define the scope of waiver of collateral rights, several courts have held that § 2255 waivers should be subject to the same conditions and exceptions

applicable to waivers of the right to file a direct appeal.  <u>Braxton</u> at 502 (citing <u>United States v. Cannady</u>, 283 F.3d 641,645 n. 3 (4th Cir. 2000) (collecting cases); <u>Butler v. United States</u>, 173 F. Supp. 2d 489, 493 (E.D.Va. 2001)).  Nonetheless, the Court distinguished the types of IAC claims available on direct appeal from those available in a § 2255 motion. Specifically, the Court noted:

> Appellate courts rarely hear ineffective assistance of counsel claims on direct review. Indeed, '[i]t is well settled that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.' <u>United States v. King</u>, 119 F.3d 290, 295 (4th Cir. 1997). Therefore, the waiver exception recognized in <u>Attar</u> applies only to a very narrow category of cases. In contrast, a rule that defendants are unable to waive their right to bring an ineffective assistance claim in a § 2255 would create a large exception to the scope of § 2255 waivers. In fact, such an exception would render all such waivers virtually meaningless because most habeas challenges can be pressed into the mold of a Sixth Amendment claim on collateral review. The Fifth Circuit has recognized this dynamic by noting that '[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so easily evaded.' <u>United States v. White</u>, 307 F.3d 336, 344 (5th Cir. 2002).

<u>Braxton</u>, 358 F. Supp. 2d at 503.

The Court in <u>Braxton</u> further noted that the Tenth Circuit has also distinguished collateral-attack waivers from the situation in <u>Attar</u> and that the Fourth Circuit's holding in <u>United States v. Broughton-Jones</u>, 71 F.3d 1143,1147 (4th Cir. 1995) also supports such a distinction.  <u>Braxton</u>, 358 F. Supp. 2d at 503, n. 2.  Finally, the <u>Braxton</u> Court found it persuasive that the majority of circuits to have confronted this question "have held that collateral attacks claiming ineffective assistance of counsel that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver, are waivable."  <u>Id.</u> at 503. (collecting cases).

The unpublished *per curiam* decision in <u>United States v. Morris</u>, 247 Fed. Appx. 459; 2007 U.S. App. LEXIS 21976 (2007) indicates that when the district court conducts a thorough Rule 11 colloquy and the defendant specifically mentions he waives the right to appeal any sentence below the statutory maximum, the record established that defendant made a knowing and voluntary waiver of rights. Similarly here, during the Rule 11 colloquy, the Court specifically inquired whether petitioner understood the waiver of his appellate and post-conviction habeas corpus relief rights contained in the plea agreement and petitioner said that he did. (Dkt.# 184 at 29 - 30). Further, petitioner specifically testified that he understood that, incident to his plea agreement, he was waiving his right to appeal his sentence or to collaterally attack it, if he was sentenced with a Base Offense Level of 37 or lower. (<u>Id</u>. at 30). Further, he testified that he understood that the mandatory minimum sentence he could serve was ten years, and that the maximum sentence for the count he was pleading to was life. (<u>Id</u>. at 13). He testified that he understood that if he pled with the career offender enhancement he had stipulated to, that his Guideline range would be 292 to 365 months. (<u>Id.</u> at 22). He further testified that he understood that if he went to trial and was convicted, his sentence would be 360 months to life. (<u>Id</u>. at 24). His sentence was 292 months imprisonment. The undersigned finds that the only reasonable conclusion from this inquiry is that petitioner knowingly and voluntarily waived the right to collaterally attack his sentence and to file this § 2255 motion, thus precluding a review of his claims enumerated herein as 1,2 and 3.

However, a waiver analysis may not be dispositive of all of the issues in this petition. To the extent petitioner has alleged that counsel was ineffective after the entry of the guilty plea ( claims previously enumerated herein as 4 and 5), those claims will be given review.

**C.     Ineffective Assistance of Counsel**

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." <u>Strickland</u> at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. <u>Id.</u> at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in <u>Strickland</u>, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Lockhart v. Fretwell</u>, 506 U.S. 364 (1993).

In addition, "a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." <u>Hill v. Lockhart</u>, 474 U.S. 52, 53-59 (1985). In the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985) (footnote omitted); <u>Hooper v. Garraghty</u>, 845 F.2d 471, 475 (4th Cir. 1988). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u> 466 U.S. at 694.

It is further noted that a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. <u>Strickland</u> 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. <u>See</u> <u>Hunt v. Nuth</u>, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

Pursuant to the waiver of appellate and post-conviction relief rights in his plea agreement,

petitioner validly waived the right to bring any claim of ineffective assistance of counsel occurring prior to the entry of his guilty plea. Therefore, as already noted, petitioner's Ground One claim that counsel was ineffective for failing to appeal the denial of his motion to suppress; his Ground Two claim that counsel was ineffective for persuading him to agree to the waiver on "misrepresented information;" and his Ground Three claim that counsel was ineffective for not challenging the Government's failure to file a 21 U.S.C. § 851(a)(1) Notice of Information of Prior Convictions, prior to the entry of his guilty plea[7] are all waived.

**Ground Four: Whether Counsel's Performance was Ineffective at Sentencing for Not Challenging Petitioner's Prior Felony Convictions Which Triggered a Career Offender Sentence Enhancement Because Petitioner's Prior Convictions Were Not Serious Drug Offenses.**

Petitioner contends that at sentencing, counsel performed unreasonably when he failed to challenge petitioner's prior felony convictions, since those crimes were insufficient to trigger a "career criminal" [sic] enhancement because they were not serious drug offenses.

Petitioner's reference to his "career criminal" enhancement reflects a misunderstanding of the enhancement that was applied under the U.S. Sentencing Guidelines. Petitioner's advisory Guidelines were enhanced because he was a career offender, not an armed career criminal.

Chapter Four - Part B - "Career Offenders and Criminal Livelihood" of the U.S.S.G. staes, in pertinent part:

(a) A defendant is a career offender if

_____

[7] Petitioner appears to misunderstand the distinction between a sentence enhancement and an advisory guidelines enhancement. Although petitioner had two prior felony drug convictions, the Government did not file a § 851 (a)(1) Notice of Information regarding them. The Government never sought to enhance petitioner's sentence on that basis; nor was it so enhanced. However, petitioner's advisory guideline range *was* enhanced pursuant to U.S.S.G. 4B1.1, on the basis of the prior felony drug convictions, because petitioner's instant offense was his third felony controlled substance offense and he was 18 years or older when he committed it, thus he qualified as a "career offender."

(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction;

(2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and

(3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

(b) Except as provided in subsection (c), if the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply. A career offenders criminal history category in every case under this subsection shall be Category VI.

U.S.S.G. 4B1.1.

Petitioner's PSR reveals that in 1993, when he was nineteen years old, he had two prior felony drug convictions for possession with the intent to deliver a controlled substance (crack cocaine), one each in Washington County, PA, and Allegheny County, PA. The offenses were committed four months apart, in April and August of 1993. He pled guilty to both; the first on October 22, 1993, and the second, on May 4, 1995. (Dkt.# 167, ¶¶ 53 and 55, at 16 and 18). As such, when he committed the instant crime and was again charged with possession with intent to distribute 50 grams or more of crack cocaine, he qualified as a career offender and received an enhanced base offense level for sentencing purposes.

Petitioner's claim that counsel was ineffective for failing to challenge his predicate offenses for the career offender enhancement is unsupported by the record. Petitioner himself stipulated to his status as a career offender in his plea agreement. (Dkt.# 141, ¶9 at 3). At sentencing, counsel presented an eloquent, impassioned argument, spanning six pages of the sentencing hearing transcript, asking the Court to ignore the career offender enhancement and grant a downward departure with a sentence of no more than ten years, and contending that petitioner's criminal history

was over-represented.   (Dkt.# 185 at 25 - 31).   Because the Court declined to grant counsel's

argument is not evidence of ineffectiveness.  Petitioner's contention that his prior drug crimes were

merely "simple possession" lacks merit.  Petitioner's probation officer provided a thorough report

of the two prior felony drug convictions and both involved much more than simple possession.[8]

Petitioner was nineteen when he committed them, and thirty-two when he committed the instant

offense; thus, under U.S.S.G. 4B1.1, they qualify.  Petitioner's counsel had no basis to challenge his

prior felony convictions and cannot be faulted for failing to do so.  "Counsel need not chase wild

factual geese when it appears, in light of informed professional judgement, that a defense is implausible

or insubstantial."  Cepulonis v. Ponte, 699 F.2d 573, 575 (1st Cir. 1983).

Furthermore, on appeal, in reviewing petitioner's claim that his sentence was impermissibly

based on race, the Fourth Circuit opined that "[i]it is undisputed that Drake qualified as a career

offender[.]"  (Dkt.# 202 at 3).

Petitioner has neither proved that counsel was ineffective in this regard, nor can he prove

prejudice.

**Ground Five: Whether Appellate Counsel was Ineffective for Failing to Raise as Grounds for Appeal the Indictment That was Based on a Defective Warrant.**

Petitioner contends that appellate counsel was ineffective for not choosing as grounds for

appeal the fact that his indictment was based on a defective warrant. Petitioner contends that

appellate counsel's failure to do so waived his rights without his knowledge.

---

[8] On April 5, 1993, petitioner was apprehended with five baggies containing 132 individually wrapped rocks of crack cocaine and a loaded, unlicensed .380 caliber Astra semiautomatic pistol, after providing another individual with approximately ½ gram of crack cocaine in payment for transportation.  On August 27, 1993, upon the execution of a search warrant on a house, petitioner was found in possession of an unspecified amount of crack cocaine.  An informant provided information to the effect that she was in the apartment the day before, and witnessed petitioner and his co-defendants cooking crack cocaine and processing drugs to be sold by others.  (Dkt.# 167 at 17 and 18).

The standard of effective assistance of appellate counsel is the same as for trial counsel. See Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) ("In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate (1) that his counsel's performance fell below an objective standard of reasonableness in light of the prevailing norms, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.") (internal citations and quotations omitted). On review, however, appellate counsel is accorded the "presumption that he decided which issues were most likely to afford relief on appeal." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993).

Moreover, "[c]ounsel is not obligated to assert all nonfrivolous issues on appeal." Bell v. Jarvis, 236 F.3d at 164. Instead, "[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." Jones v. Barnes, 463 U.S. 745, 752 (1983); see also Smith v. South Carolina, 882 F.2d 895, 899 (4th Cir. 1989). "Indeed, winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the landmark of effective advocacy." Bell v. Jarvis, 236 F.3d at 164 (quoting Smith v. Murray, 477 U.S. 527, 536 (1986) (internal quotations omitted). However, although it is "still possible to bring a Strickland claim based on counsel's failure to raise a particular claim" on direct appeal, demonstrating that counsel was incompetent for failing to do so will be difficult. Smith v. Robbins, 528 U.S. 259, 288 (2000). "Generally only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986).

Petitioner claims that appellate counsel was ineffective for failing to raise as grounds for

appeal the fact that his indictment was based upon a defective warrant, because he was "[i]llegally searche [sic] and seizure[.]" (Dkt.# 2223 at 4). In his original § 2255 motion,[9] he only alleges "I told my lawyer all the issue [sic] but for some reason she only raise the waiver issue." (Id.). Beyond this, petitioner offers no legal argument or facts in support of this claim.

The record reveals that, based on information provided by a confidential informant that a crack dealer by the name of "Papa Bear" (a.k.a. petitioner) was at the residence of Tina and James Carroll to sell crack cocaine, a search warrant was obtained and executed at that residence. Petitioner was apprehended, partially protruding from the bathroom window as he was attempting to escape. In his hand was a "wad of cash." After being ordered to pull back inside the bathroom, the officer heard the sound of the toilet being flushed. Upon a search, cash and a quantity of crack cocaine in plastic baggies were obtained from the toilet or its trap. Approximately $5,900 in cash was also found in the tub in the same bathroom. The home was leased by the Carrolls and none of petitioner's luggage or personal belongings were found there. (Dkt.# 71 at 3 - 4).

Petitioner filed a motion to suppress (Dkt.# 52), challenging the validity of the search warrant. A hearing on the motion was held on July 24, 2007 (Dkt.# 60). On August 3, 2007, the assigned Magistrate Judge (undersigned) recommended that the motion be denied because, *inter alia,* petitioner neither owned nor rented the residence that was searched, and thus had no standing to file the motion, because he had no "a reasonable expectation of privacy" in the place that was searched. (Dkt.# 71 at 14). Petitioner did not object to the Report and Recommendation, even after being granted an extension of time in which to do so. The Court adopted it five months later, by

---

[9] Petitioner made this tersely-worded claim in his original, nearly-blank, unsigned § 2255 motion. (Dkt.# 223 at 4). When directed to file a more complete motion, he made no further mention of this claim of ineffective assistance against appellate counsel.

Order entered on January 9, 2008 (Dkt.# 135), the same day that petitioner signed his plea agreement.

This issue lacks merit and is unsupported by the record.  It is apparent from the record that defense counsel was in plea negotiations with the Government during the time that petitioner could have filed his objections to the Report and Recommendation denying his motion to suppress, and that petitioner gave up the right to appeal his motion to suppress in order to gain the reciprocal benefits offered by the plea agreement.

At petitioner's plea hearing, he testified that his lawyer had done a good job representing him. (Dkt.# 184 at 40).  He denied that his attorney, who was retained, not appointed counsel, had done anything improperly or left anything undone.  To the contrary, he testified that counsel "did everything." (Id. at 43).

The entry of a guilty plea constitutes a waiver of any potential motion to suppress.

United States v. Wilson, 115 F.3d 1185 (4th Cir. 1997); Federal Rule of Criminal Procedure 12(b)(3).

Petitioner's plea was entered after a Rule 11 hearing that unequivocally advised him of all of the rights he was giving up, including the right to make the Government put on its case.  (Id. at 31 - 33).  This exchange was had:

> THE COURT: Okay.  Now also I want to make sure you know, if you plead guilty here today and say the words guilty to Count One and I make a finding that that's a knowing and voluntary plea, that's a very important finding that pretty much bars you from being able to attack your plea as involuntary later on.  If you - - if you don't know what you're doing, you need to tell me today. You can't tell me four months from now after you said today, yeah, I know what I'm doing.  Do you understand?
>
> THE DEFENDANT: Yes.

(Id. at 30).

Clearly, here, appellate counsel examined the record with a view to selecting the most promising issues for review. Jones v. Barnes, 463 U.S. 745, 752 (1983); see also Smith v. South Carolina, 882 F.2d 895, 899 (4th Cir. 1989). Since this issue lacked merit, it is not surprising that appellate counsel did not choose it as grounds for appeal. Generally only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986). Petitioner cannot claim that counsel was ineffective in not raising an issue on appeal when there was no issue to raise. See Smith v. Robbins, 528 U.S. 259, 288 (2000).

## V. Recommendation

For the reasons set forth in this opinion, the undersigned recommends that the Court enter an Order **DENYING** the petitioner's original and amended § 2255 motions (Dkt# 223 and 231) and **DISMISSING this case with prejudice**.

Further, petitioner's Motion for Free Copy of Transcripts from Suppression Hearing (Dkt.# 225);  his request that his career offender enhancement be dropped; his request that he be re-sentenced with his "original base offense [level of] 28, "Catg III, which is 87 - 108"; and his request for an evidentiary hearing on the allegedly defective warrant and indictment should be all be **DENIED** as moot.

**Within fourteen (14) days** after being served with a copy of this opinion/report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the opinion/report and recommendation to which objection is made and the basis for such objections.  A copy of any objections shall also be submitted to United States District Judge Irene

Keeley. Failure to file timely objections to this Opinion/Report and Recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Opinion/Report and Recommendation to counsel of record via electronic means.

DATED: January 27, 2011

s/ *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE